UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CODY WAYNE HOPKINS,<br><br>Defendant. | CR. 20-50095-JLV<br><br>ORDER |

**INTRODUCTION**

A jury convicted defendant Cody Hopkins of attempted enticement of a minor using the internet.   (Docket 72).   Defendant filed a post-trial motion for new trial together with three legal memoranda.   (Dockets 77, 78, 83 & 85).   The government opposes defendant's motion.   (Docket 84).   For the reasons stated below, defendant's motion is denied.

**ANAYLSIS**

I.   PROCEDURAL BACKGROUND

On August 25, 2022, a jury convicted Mr. Hopkins of attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b). (Dockets 19 & 71-72).   On September 6, 2022, Mr. Hopkins timely filed a motion for a new trial together with a legal memorandum.   (Dockets 77 & 78).   The court directed the defendant to order the transcript of the trial closing arguments.   (Docket 79).   On September 21, 2022, defendant filed an excerpt of

the trial transcript (the "transcript").   (Docket 80).   The transcript included the trial testimony of Mr. Hopkins and the closing arguments of the parties.   Id. The government moved the court to require the defendant to file a supplemental brief specifically referencing the transcript in support of his new trial motion prior to filing its responsive brief.   (Docket 81).   The court granted the government's motion.   (Docket 82).   The order established new deadlines for the filing of briefs.   Id.   Additional briefs were filed by the parties.   (Dockets 83-85).

## II.   DEFENDANT'S MOTION

Defendant's motion seeks a new trial pursuant to Fed. R. Crim. P. 33 on two grounds.   (Docket 83).   Those are:

A.    Prosecutorial misconduct—sleep deprivation, credibility, misleading the jury; and

B.    Prosecutorial misconduct—misrepresentation of burden of proof.

Id.

## III.   RULE 33(a) MOTION

Fed. R. Crim. P. 33(a) gives the district court authority to vacate a judgment and grant a new trial in the interest of justice.   Defendant timely filed his motion within 14 days of the verdict.   Fed. R. Crim. P. 33(b)(2).   The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).   The court's discretion is both broad and limited.   Id.   It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial

evidence to sustain the verdict."   Id. (internal quotation marks and citations omitted).   "[T]he court need not view the evidence most favorably to the verdict." United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").

The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. Id.; see also United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010) ("Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.") (internal quotation marks and citation omitted); Worman, 622 F.3d at 978 ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur."); United States v. Camacho, 555 F.3d 695, 705 (8th Cir. 2009) ("[A] new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."); United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980) ("If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it

3

may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.").

Because a motion for new trial based on the weight of the evidence is "generally disfavored," the district court should use its authority to grant a Rule 33 motion "sparingly and with caution."   Campos, 306 F.3d at 579 (internal quotation marks and citations omitted); see also United States v. Bertling, 510 F.3d 804, 808 (8th Cir. 2007) ("A district court should not grant a motion for a new trial simply because it would have reached a different verdict.") (citations omitted).

IV.   PROSECUTORIAL MISCONDUCT

To receive a new trial based on prosecutorial misconduct, "defendant must show that the government's conduct was improper and that it 'affected the defendant's substantial rights so as to deprive him of a fair trial.' "   United States v. Clayton, 787 F.3d 929, 933 (8th Cir. 2015) (quoting United States v. Hunter, 770 F.3d 740, 743 (8th Cir. 2014)) (some internal quotation marks omitted).   "In assessing the prejudicial impact of prosecutorial misconduct [the court] must consider: 1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence; and 3) the curative actions taken by the district court."   United States v. Wadlington, 233 F.3d 1067, 1077 (8th Cir. 2000).

While "a single misstep on the part of the prosecutor may be so destructive to the right to a fair trial that reversal is mandated[,] . . . the key question

ultimately is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>United States v. Schneider</u>, 157 F. Supp. 2d 1044, 1055 (N.D. Iowa 2001) (quoting <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986)).

V.   RESOLUTION OF DEFENDANT'S CLAIMS

    A.   <u>Prosecutorial Misconduct—Sleep Deprivation, Credibility, Misleading the Jury</u>

Mr. Hopkins' argument begins in the government's cross-examination of him during trial.   Mr. Hopkins told the jury the statements in his post-arrest law enforcement interview were not lies but rather were the consequence of "going on severe sleep deprivation."   (Docket 80 at p. 27:13-28:3).   The following exchange occurred with government counsel:

> Q.   And would you also agree, like you discussed today and in your interview, you're a mechanic by trade.   Correct?
>
> A.   Yes.
>
> Q.   You're—you don't have any specialized training in rescuing abused and neglected children.   Would you agree?
>
> A.   It was just experience.
>
> Q.   But no formal training or expertise in it?
>
> A.   No.
>
> Q.   And that experience was one time that you previously met a minor online, met that person, and concluded you helped her. Correct?
>
> A.   No.

Q.  You discussed one time. Was [sic] there more times that you didn't disclose to the police that you met minors and helped them?

A.  No.

Q.  There was just the once.   Correct?

A.  No.

Q.  So there was more?

A.  No.

Q.  What are you saying "no" to?   You never met a person, so you lied in your interview?

A.  I'm saying in my interview I had been going on severe sleep deprivation.  I got confused with another person I had met back home.

Q.  You didn't declare this severe sleep deprivation to anybody when you were doing your interview.   Correct?

A.  I did declare it, but it was not mentioned in the reports.

Q.  You declared it on the recording?

A.  No.

(Docket 80 at p. 27:4-28:10).

During re-direct examination, Mr. Hopkins clarified he spoke about sleep deprivation with "the officer that was taking [him] to the precinct."   Id. at pp. 34:25-35:1.   This discussion centered around Mr. Hopkins' alleged conversation with Detective Almeida, the officer who transported defendant to the Homeland Security detention center.

In its initial closing argument, the government addressed defendant's intent in light of the court's Instruction No. 5.   (Docket 80 at p. 45:22-24) (referencing Docket 64 at p. 9).   The argument developed as follows:

> Now, what he says, whether it was in the interview with law enforcement or up here today on the stand, if you believe any of it, you can consider that.   But it is only one part of the consideration.

> Again, as we discussed in jury selection, you can determine someone's intent by looking at how they act, what they say before, during, after an event.   And the law says intent may be proven just like anything else.   You can consider any statements made or acts done by the defendant and all the facts and circumstances in evidence which may aid in determining the defendant's intent.

> You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly admitted -- omitted.

> And let's talk a little bit more about the defendant's admissions and what he said in the interview with law enforcement.   Before we get into that, I want you to think back this morning.   Detective Almeida was on the stand.   He testified, and he told you that he was the transport officer for Mr. Hopkins on the night of his arrest.   He took him from Stevens High School to Homeland Security Investigations' office.

> And during that time, he made one statement.   The defendant made one statement that, "Hey, does this happen a lot?"   Detective [Almeida] had to clarify.   He said, "Do people solicit underage people around here often?"   Detective Almeida answered that question, said, "Probably the same as anywhere else."

> And then I asked him under oath if there was anything else that the defendant told him that night.   And he said nothing.   There was nothing else.   Detective Almeida didn't ask him any questions, because that would have been inappropriate, as he talked about he was under arrest and hadn't been read his Miranda rights.   And the defendant made no other statements.

> So you can consider that, as you consider Mr. Hopkins' getting on the stand today for the first time saying, "I was sleep deprived."   You can consider who you believe in that situation.

Id. at p. 46:5-47:18.

Mr. Hopkins asserts the government's argument is not true and "the government unfairly misled the jury into thinking [he] was lying and argued that he should not be believed because of that lie."   (Docket 83 at p. 2).   He submits the government's argument was not true because it participated in the redaction of defendant's interview and his "discussion of sleep deprivation had been removed by the parties."   Id.

Defendant asserts the government continued this deception in its rebuttal argument.   Mr. Hopkins argues the government improperly suggested he was picking pieces out of the interview video and encouraged the jury to watch the video, all the while the government knew the video had been redacted.   Id. at pp. 2-3 (referencing Docket 80 at pp. 65-66).

During closing, defense counsel played a portion of Mr. Hopkins' video-interview with law enforcement.   (Docket 80 at p. 63:7).   As the setup for the exhibit, defense counsel stated:

> And I want to leave you with one final clip.   It's when Cody was faced with that "she's a real girl" deception.   He didn't say, oh, man, I'm in trouble.   He didn't worry about himself.   He had concern for the 13-year-old getting help.   And that, I submit, is the best evidence of intent.

Id. at p. 63:1-6.   In rebuttal, government counsel responded to the video clip and argued:

8

It was just definitely a pick and choose from the video, ladies and gentlemen, and the video of the interview was admitted into evidence. And if there's any questions as to what the whole interview, not just little picked pieces—you have it and you can watch it again for your full consideration, not just the pieces that the defense wants you to see.

It is interesting, though, they picked a part where he was talking about this other person.  He said to you on the stand today that didn't happen, that he was sleep deprived.  And that why he said that in the interview, yet it was shown to you in the defense closing.

Id. at p. 65:21-66:7.

Defendant acknowledges not objecting to this line of government argument.  (Docket 85 at p. 2).   Mr. Hopkins contends the government's argument that he was lying was not only improper but a misstatement and prejudicial to his defense.   (Docket 83 at pp. 2-3).

In response, the government asserts Mr. Hopkins "was able to testify at trial unchallenged by the United States that he was sleep deprived.   He said, '[y]eah, I hadn't slept at all.' "   (Docket 84 at p. 1) (referencing Docket 80 at p. 24:20-21). With this statement, the government claims "[t]hough [Mr. Hopkins] was later briefly challenged on this point, his original assertion stood."   Id. at p. 2 (referencing Docket 80 at p. 28:5-10).

While cross-examining Mr. Hopkins about "his claim of sleep deprivation," government counsel notes having not "recall[ed] the defendant's statement regarding being sleep deprived during the interview."   Id.   If Mr. Hopkins' attorney recalled the sleep deprivation "statement from the unredacted version of the [interview] transcript," the government submits defense counsel "should have

9

objected and addressed the issue during trial so the [government's] misunderstanding could be remedied."   Id.

In reply, Mr. Hopkins argues the government's brief "concedes that its characterization of [his] testimony was improper[.]"   (Docket 85 at p. 2).   He submits "the Government intended to 'spoil' Hopkins' credibility with the jury, particularly regarding his intent, by calling him a liar."   Id.   Because the government's "improper credibility attack went entirely to a key issue in the case—Hopkins' intent," defendant argues "this prejudiced his right to a fair trial."   Id.   Mr. Hopkins claims his attorney "was unable to object at the time of trial, because the parties had agreed to redact the salient portions of Hopkins' interview."   Id.   He submits that to object to the government's argument, defense counsel would have necessarily had to review the unredacted interview transcript, find the passage at issue and then lodge an appropriate objection. Id. at p. 3.   Mr. Hopkins argues this would not have been possible during the confines of closing argument.   Id.

RESOLUTION OF DEFENDANT'S GROUND #1

Federal Rule of Criminal Procedure 51 is the initial place the court must look in resolving defendant's objection.   "A party may preserve a claim of error by informing the court . . . of [1] the action the party wishes the court to take, or [2] the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. Proc. 51(b).   The purpose of this rule it that it "gives the district

10

court the opportunity to consider and resolve [the contested issue]."   <u>Puckett v.</u>

<u>United States</u>, 556 U.S. 129, 134 (2009).   The trial court

> is ordinarily in the best position to determine the relevant facts and
> adjudicate the dispute.   In the case of an actual or invited
> procedural error, the district court can often correct or avoid the
> mistake so that it cannot possibly affect the ultimate outcome.   And
> of course the contemporaneous-objection rule prevents a litigant
> from "sandbagging" the court—remaining silent about his objection
> and belatedly raising the error only if the case does not conclude in
> his favor.

<u>Id.</u> (internal quotation marks and references omitted).

Rule 51(b) is mitigated "by Rule 52(b), which allows plain errors affecting

substantial rights to be noticed even though there was no objection."   <u>Johnson</u>

<u>v. United States</u>, 520 U.S. 461, 466 (1997).   Rule 52(b) provides "[a] plain error

that affects substantial rights may be considered even though it was not brought

to the [trial] court's attention."   Fed. R. Crim. P. 52(b).

"The plain-error doctrine of [Rule] 52(b) tempers the blow of a rigid

application of the contemporaneous-objection requirement."   <u>United States v.</u>

<u>Young</u>, 470 U.S. 1, 15 (1985).   "The Rule authorizes the [court] to correct only

'particularly egregious errors,' . . . those errors that 'seriously affect the fairness,

integrity or public reputation of judicial proceedings[.]' "   <u>Id.</u> (internal citations

omitted).   "In other words, the plain-error exception to the contemporaneous-

objection rule is to be 'used sparingly, solely in those circumstances in which a

miscarriage of justice would otherwise result.' "   <u>Id.</u> (internal citations omitted).

"Any unwarranted extension of this exacting definition of plain error would skew

the Rule's 'careful balancing of our need to encourage all trial participants to

seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.' " Id. at 15-16 (internal citation omitted).   "Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record." Id. at 16.

To complete a plain error review under Rule 52(b) requires the court to address four issues:

> First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. . . .
>
> Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. . . . .
>
> Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." . . . .
>
> Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' "

Puckett, 556 U.S. at 135 (internal citations omitted).   "Meeting all four prongs is difficult, as it should be." Id. (internal citation and quotation marks omitted).

"In reviewing criminal cases, it is particularly important for appellate courts to relive the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure." Young, 470 U.S. at

12

16 (internal citation omitted).   "To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution."   Id. (internal citation omitted).

Whether the discussion between Mr. Hopkins and Detective Almeida occurred would have been difficult for the defendant to prove because the conversation was not recorded.   And Detective Almeida, according to the government's closing argument, denied the defendant mentioned he was sleep deprived during the transfer to the detention center.   This representation by the government is not challenged by Mr. Hopkins.

However, during defendant's testimony, neither defense counsel nor Mr. Hopkins mentioned the video-interview exhibit which redacted the following exchange between Special Agents Pohlen and Propes with the defendant on the night of his arrest.

| | |
|---|---|
| Hopkins: | Everything that's everything that's being on me, but do you have any coffee? |
| Pohlen: | Umm. |
| Hopkins: | I mean, I'll drink it black. |
| Propes: | We can go see, I don't know if there's any brewed or not. We can see if we can get you some.   No promises though. |
| Hopkins: | Okay. |
| Propes: | Alright? |
| Hopkins: | Yeah, you know, I'll drink the water it's just – |
| Propes: | Yeah, if you'd like some coffee. |

13

|            |                                                    |
|------------|----------------------------------------------------|
| Hopkins:   | I've only had 3 hours of sleep in the past 72 hours. |
| Propes:    | Yep.                                               |
| Pohlen:    | Let me go see if I can find any.                   |

(Docket 78-1 at pp. 2-3).

The parties agree this statement and the surrounding discussion of coffee was redacted from the trial exhibit.   (Dockets 78 at pp. 4-5 and 84 at p. 2). Defendant argues "[b]ecause of the parties mutual editing of the transcript, and because evidence was closed, the Defendant could not correct the prosecution's misleading argument."  (Docket 78 at p. 6).

Defendant's suggestion that once the redaction occurred he was prohibited from broaching the subject again, even during the re-direct examination of Mr. Hopkins, is tenuous at best.   Nothing prevented defense counsel from approaching the court, with government counsel present, to seek permission to expand re-direct examination to incorporate that portion of the video-interview transcript which had been redacted.   Had that happened, the court is confident government counsel would have reacted to clarify the oversight in its examination of Mr. Hopkins or the court would have permitted defense counsel to read the redacted colloquy to the jury.   Puckett, 556 U.S. at 134.   To simply argue defense counsel was barred from addressing the issue prior to the conclusion of all the evidence is without merit.

Because no objection was made contemporaneous with a re-direct examination of Mr. Hopkins or during the government's initial or rebuttal closing

arguments, the court must determine whether the government's argument constituted plain error requiring relief in the form of a new trial.   Puckett, 556 U.S. at 135.   The court will address each of the four Puckett factors.

      1.    Was there an error?

"A closing argument should be based upon the facts in evidence and reasonable inferences therefrom and should not assert factual propositions for which there are no evidentiary support."   United States v. Guerra, 113 F.3d 809, 817 (8th Cir. 1997).   The government's argument suggesting the jury review the video interview exhibit to confirm that Mr. Hopkins did not mention sleep deprivation was an error.   Both parties agreed to redact the exhibit.   While the court accepts government counsel's statement that it was an "oversight" on her part in failing to remember defendant's statement had been redacted, the court is compelled to find the argument was an error.   This satisfied the first prong of the plain error analysis.   Puckett, 556 U.S. at 135.

      2.    Was the legal error clear or obvious?

The government's error is clear, obvious and not "subject to reasonable dispute."   Puckett, 556 U.S. at 135.   This satisfied the second prong of the plain error analysis.   Id.

      3.    Did the error affect defendant's substantive rights?

In this prong, the court must determine whether the error "affected the outcome of [the trial] court proceedings."   Id.   "The relevant question ultimately is whether the prosecutor's comments, if improper, 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"   United

States v. Mullins, 446 F.3d 750, 757 (8th Cir. 2006) (citing Darden v.

Wainwright, 477 U.S. 168, 181 (1986); internal citation omitted)

Mr. Hopkins' trial testimony, in part, focused on his other experiences and

his conversation with the undercover persona.   He acknowledged:

Being on three different dating sites in August, 2020.   (Docket 80 at
pp. 5:9-6:3);

"[S]ex wasn't off the table."   Id. at p. 6:6;

The persona "was somebody [he'd] be interested in meeting."   Id. at
p. 6:12-24;

Initiating contact by sending a message to the persona's profile to
"see if they were interested in meeting up."   Id. at p. 7:22-24;

Suggesting the persona and he get together in a hotel room.   Id. at
pp. 8:20-9:1;

Physical contact with the persona could end up with sex.   Id. at
pp. 9:22-10:1;

When the persona indicated being 13 years old, he "thought about
[his] options at that time."   Id. at p. 10:20-22;

Now he was "talking to a teenager."   Id. at p. 11:7-14;

The text messages lead him to believe "this is a teenager that's
regularly left alone."   Id. at p. 12:13-17;

This "was just another confirmation that this young person was
meeting with older men on a regular basis."   Id. at p. 13:5-6;

"[S]he was having sexual relationships with somebody of my age
group."   Id. at p. 14:2-4;

"[A] little excitement" meant "[u]sually sexual play" to him.   Id. at
p. 14:5-11;

16

"[P]laying around" typically meant "always sex" on a dating site.   Id. at p. 14:12-14;

"Talking about sex; oral sex, specifically, and other sex . . . would entice a sexually active person."   Id. at p. 14:22-24;

The persona was "sexually active . . . even at 13 . . . she's sexually active."   Id. at p. 15:1-4;

He was "making the decisions on [his] own as a 29-year-old adult." Id. at pp. 19:20-23;

He was camping in his own tent at the Buffalo Chip [Campground near Sturgis, South Dakota].   Id. at p. 23:16-20;

He had no qualifications to counsel the persona, who he perceived to be an abused or neglected child, other than through his own "experience."   Id. at p. 27:4-29:3;

That "play" and "excitement" in his world "always refers to sex."   Id. at p. 31:1-9; and

Using "sexual words to convince" the persona to meet him "[f]or the process of intervention."   Id. at p. 32:22-24.

The evidence from the social media applications and text messages shown to the jury and explained by the law enforcement officer portraying the persona together with the statements by Mr. Hopkins were the overwhelming focus of the trial.   Whether Mr. Hopkins lied to the transport officer or told the interviewing officers about his sleep deprivation played a minor, if not minuscule, part in evidence submitted for the jury's consideration.

The court finds Mr. Hopkins' testimony about being sleep deprived and only wanting to counsel and help the 13-year-old was not credible.   Lacey, 219 F.3d at 783-84.   Asking her if he should get a hotel room and showing up bare chested at the rendezvous site were strong evidence of Mr. Hopkins' intent.   See

17

Trial Exhibit 5 at p. 3-4 and Trial Exhibit 6.   And, if there had been a teenage girl, he would have engaged in a sexual act in violation of South Dakota law.

The "cumulative effect" of the government's mistaken argument pales in comparison to "the strength of the properly admitted evidence of the defendant's guilt[.]"   United States v. Yu, 484 F.3d 979, 986 (8th Cir. 2007).   Here the evidence of Mr. Hopkins' guilt was overwhelming.   "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone[.]"   United States v. Crawford, 523 F.3d 858, 861 (8th Cir. 2008) (citing Young, 470 U.S. at 11).

Reflecting upon the entirety of the trial evidence, the court concludes the error did not affect the outcome of the trial or impact the jury's verdict.   This conclusion defeats the third prong of the plain error analysis.   Puckett, 556 U.S. at 135.

        4.     Did the error seriously affect the fairness, integrity or public reputation of the trial?

While all three of the above prongs were not satisfied, the court will still consider the fourth factor.   The court finds the jury's verdict does not cast any doubt on the "fairness, integrity or public reputation of [trial] proceedings."   Id. "On this record," the court "hold[s] that the argument of the prosecutor, although error, did not constitute plain error warranting the [the trial court] to overlook the failure of the defense counsel to preserve the point by timely objection; nor [is the court] persuaded that the challenged argument seriously affected the fairness of the trial."   Young, 470 U.S. at 20.

Defendant's first ground for a new trial is overruled.

      B.     PROSECUTORIAL MISCONDUCT–MISREPRESENTATION OF
            BURDEN OF PROOF

Mr. Hopkins argues he is entitled to a new trial because the government's rebuttal argument suggested it need only prove the defendant had "the intent to entice a minor but not the intent to entice [a minor] to engage in acts which are in violation of state law."   (Docket 83 at p. 3) (internal quotation marks omitted; referencing Docket 64 at p. 8).   In support of his argument, defendant directs the court to six separate passages of the government's rebuttal argument.   Id. at pp. 4-5.

The essence of the defendant's position is that the government's argument shifted away from acknowledging its burden of proof required by Instruction No. 4.   Id. at pp. 3-4.   He claims the government specifically argued it did "not have to prove Hopkins' intent was to get the minor to commit a criminal activity, but only to prove he enticed her to meet him."   Id. at p. 4.

As with defendant's first claim, it is important for the court to examine the government's closing arguments in full.   Young, 470 U.S. at 16.   The government specifically mentioned its burden to prove that if Mr. Hopkins's plan had been successful, a violation of state law would have occurred.   The government referenced that obligation in both its initial and rebuttal arguments.

During its initial closing argument, the government acknowledged its obligation:

It is the United States' burden in this case to meet all elements of the crime charged.   And so because of that, I'm going to spend a little time with you this afternoon going through some of those elements with you in detail. These jury instructions were read to you previously.   I'm going to put a few of them up on the screen as we talk about them.   What I want you to remember is that what the United States has to prove beyond a reasonable doubt are these elements; just the elements, and nothing else.

(Docket 80 at p. 36:9-18).   The government's initial argument continued:

So the third part of—or the third element of this charge is that if the sexual activity had occurred, Mr. Hopkins could have been charged with a criminal offense under South Dakota law.   And then it goes on to explain what South Dakota law is.

So here we're discussing rape in the fourth degree, which is a criminal offense under the South Dakota law, which is committed when someone who is at least three years older than an individual engages in an act of sexual penetration with that individual, if the individual has reached 13 years of age but has not reached 16 years of age.

So we know that Lucy, who he believed to be Lucy, was 13 years old, and that Mr. Hopkins was 29 years old at the time.   More than that three-year age difference as is required by law.

And sexual penetration means any act, however slight, of sexual intercourse, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another person's body.

Id. at p. 43:7-44:2 (referencing Docket 64 at p. 8).

When government counsel began its rebuttal argument the jury was

reminded:

You have the instructions.   The Court has given them to you.   And we have spoken many times about specifically page number 7 and what's at the top and what we [the government] actually have to prove, what intent we have to prove.

20

Id. at p. 63:22-25 (referencing Docket 64 at p. 7).   While addressing the concepts

of attempt and substantial step, the government developed the following options

for the jury to consider regarding defendant's "dirty talk."   Id. at p. 68:6.

> So a couple of different scenarios can happen.   Either, one, he used
> it to entice her into sex because he wanted to have sex with her.
>
> I would submit to you that the guy standing there with his shirt wide
> open when he was going to be meeting this 13-year-old speaks
> volumes to that.   Or, he used it to entice her to agree to keep on
> talking to him and to meet him.
>
> Either way, ladies and gentlemen, he is guilty of enticement of a
> minor.   Maybe not some other charge where we would have to prove
> that he was going to go through with sex.   You don't have to.   And
> you have this.   You have from the Court where the actual law is[.]

Id. at p. 68:7-19.   Defendant objected.   Id. at p. 68:20-21.

At a bench conference with government counsel present, defendant stated

the basis for his objection.

> It appears that [government counsel is] stating that she only has to
> prove that he intended to entice her and not entice her to engage in
> sexual activity.   And I think the instructions are rather clear, but
> she's repeatedly said he has to entice her, and whether it's entice her
> to meet, that's enough.   And I think that's an inaccurate statement
> of the law.

Id. at p. 69:2-8.   Government counsel responded:

> I can certainly clarify that that wasn't at all what I previously said,
> and made it very clear what the intent was, and that the sexual
> activity just couldn't ever occur.   And that it's not—you know, it's
> not a legitimate argument to say that we had to prove that it was
> going to occur.

Id. at p. 69:10-15.   The court agreed with government counsel.   Id. at

p. 69:16-17.   The court explained to both attorneys:

The element is, is to entice her to engage in acts which are in violation of state law.   And the last comment, which caused the objection, would not include that last section.   And maybe you weren't done talking, but you always—these things that happened was to entice her to meet, which was not the crime.

Id. at p. 69:17-22.   Defense counsel clarified the objection:

If I can, Your Honor, she said at least three times all she had to prove was that he intended entice, and she left off the other portion.[1]   So I waited to make the objection to see if it was repeated.

Id. at pp. 69:24-70:2.   The court sustained defendant's objection.   Id. at

p. 70:3-4.

After the bench conference, the court explained to the jury:

Now ladies and gentlemen, the instructions are really important. So they are the law in the case.   You heard me read them.   Refer to them again.   You heard them during the deliberations [sic].

Ms. Collins is going to make a clarification on the process of the argument she was making.   The objection was appropriate, and we've discussed that up here.

Id. at p. 70:11-17.   Government counsel continued with its argument to

the jury.

Thank you, Your Honor.

And ladies and gentlemen, just to be clear, the enticement does have to be—and I'll read the whole thing rather than just a part of it, which is:

"What the government must prove is that Mr. Hopkins intended to persuade or entice a minor into engaging into illegal sexual activity,"

---

[1]Defendant's briefing contends the government's rebuttal argument was improper not three times but six times up to that point.   (Docket 83 at pp. 4-5). The court finds defendant's objection resolved these five past alleged improprieties in the government's argument.

which is those violations of South Dakota law.    [Referencing Docket 64 at p. 8].

He admitted that to you.   He said he wanted to—he wanted to entice a sexually active person.   It's a legal impossibility for this to have actually occurred, and you're told it doesn't have to actually occur. And I understand it's a nuanced argument.

Because this case is proven because had this been a real young girl, he admitted that the reason, the lure, that carrot he was hanging in front of her was sex.   It was not any other reason.   It wasn't money. It wasn't anything else.   And sex between the two of them, him being 29 years old and her being 13, violated state law, South Dakota state law, inherently.   Consent doesn't matter.   Nothing else matters.

And so that last part, "entice a minor into engaging into sexual activity," we don't have to prove it worked.   We don't have to prove there was a real kid there, because that's not the law.   He had the intent, either way you look at it.   The bare-chested guy that showed up in Exhibit 6, clearly wanting to have sex, clearly enticing to have sex, but we don't even have to show that.

We can show that he intended to entice her and that she would show up believing there would be sex that would make her feel good, and that is inherently illegal sex.   There's no legal sex that could have occurred between Mr. Hopkins and this child.

So the concept would be, either way he's guilty. Either way, the crime he's charged with was committed; whether it's the more likely scenario that he was there to have sex with her and he enticed her into coming there, and they were set on the mind—or rather there was an intent to have illegal sex.

Or, he enticed her with sex because he wanted to save her.   And maybe as absurd as that sounds, the case was proven, because he used sex to lure her there, and that would be illegal sex.   Either way, he's guilty.

Id. at p. 70:19-72:12.

Defendant only objected to the government's previous argument.   If he believed the government's clarification was inappropriate, another objection should have been asserted.   However, that objection would have been overruled.

Reviewed in light of the court's explanation of the importance of jury instructions, the government's argument was a proper summation.   That is, the argument was an accurate application of the government's view of the trial evidence to the court's jury instructions.

"[C]omments that passed without objection during the rough-and-tumble of closing argument in the trial court should not be unduly magnified when the printed transcript is subjected to painstaking review in the reflective quiet of [a] . . . judge's chambers."   United States v. Mullins, 446 F.3d 750, 758 (8th Cir. 2006).   "Viewed in the context of the [government's arguments]" the court "conclude[s] that the prosecutorial comments to which [defendant] now objects do not alone, or in combination, warrant a new trial."   Id., 446 F.3d at 762.

The jury was instructed that "[s]tatements, arguments, questions and comments by lawyers . . . are not evidence.   Opening statements and closing arguments by lawyers are not evidence."   (Docket 64 at p. 12).   This "instruction served to alleviate any risk of prejudicial impact."   United States v. Robinson, 110 F.3d 1320, 1326-27 (8th Cir. 1997).   "A thorough study of the record in this case convinces [the court] that the defendant had a fair trial and that the defendant has not demonstrated that the court has committed any prejudicial error."   Johnson v. United States, 291 F.2d 150, 157 (8th Cir. 1961).

24

Defendant's second ground for a new trial is denied.

## ORDER

Based on the analysis above, it is

ORDERED that defendant's motion for a new trial (Docket 77) is denied.

NOTICE IS GIVEN that an order will be entered scheduling defendant's sentencing hearing.

Dated January 25, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE